ACCEPTED
15-24-00050-cv
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
1/28/2025 4:00 PM
CHRISTOPHER A. PRINE
CLERK

Cause No. 15-24-00050-CV

IN THE COURT OF APPEALS FOR THE
FIFTEENTH DISTRICT OF TEXAS

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
1/28/2025 4:00:08 PM
CHRISTOPHER A. PRINE
Clerk

Texas Commission on Environmental Quality
and Guadalupe-Blanco River Authority,
*Appellants,*
v.
National Wildlife Federation,
*Appellee.*

## REPLY BRIEF OF APPELLANT, THE TEXAS COMMISSION ON ENVIRONMENTAL QUALITY

On Appeal from the 98th Judicial District Court of
Travis County, Texas, Cause No. D-1-GN-20-00709-007096

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney
General

JAMES LLOYD
Deputy Attorney General for Civil
Litigation

KELLIE E. BILLINGS-RAY
Chief, Environmental Protection
Division

January 28, 2025

KATIE B. HOBSON
Assistant Attorney General
State Bar No. 24082680
Katie.Hobson@oag.texas.gov

Office of the Attorney General
Environmental Protection Division
P. O. Box 12548, MC-066
Austin, Texas 78711-2548
(512) 463-2012
(512) 320-0911 (fax)

COUNSEL FOR THE TEXAS
COMMISSION ON
ENVIRONMENTAL QUALITY

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

Index of Authorities..............................................................................ii

Glossary of Terms and Abbreviations......................................................iv

Summary of the Argument ...................................................................... 1

Argument................................................................................................2

    I.     The Court must read the habitat assessment statute in context of Chapter 11 as a whole; doing so supports the Commission's determination that the statute does not apply to GBRA's application. ............................................... 2

    II.    GBRA's Application provided the Commission with enough information to make the requisite determinations for issuance of the permit under Chapter 11 of the Texas Water Code..................................... 7

    III.   None of the errors alleged in NWF's suit for judicial review of the Commission's Order prejudiced NWF's substantial rights. ............................................................... 11

Conclusion and Prayer ........................................................................ 14

Certificate of Compliance..................................................................... 16

Certificate of Service .......................................................................... 17

# INDEX OF AUTHORITIES

## Cases

*AC Interests, L.P. v. Tex. Comm'n on Envtl. Quality,*
543 S.W.3d 703 (Tex. 2018) ........................................................................9

*Chisolm v. Bewley Mills,*
287 S.W.3d 943 (Tex. 1956) ........................................................................9

*City of Schertz v. Tex. Comm'n on Envtl. Quality,*
653 S.W.3d 468 (Tex. App.—Amarillo 2022, no pet.)..........................13

*Dyer v. Tex. Comm'n on Envtl. Quality,*
646 S.W.3d 498 (Tex. 2022) ......................................................................13

*Image API, LLC v. Young,*
691 S.W.3d 831 (Tex. 2024) ........................................................................8

*TJFA, L.P. v. Tex. Comm'n on Envtl. Quality,*
632 S.W.3d 660 (Tex. App.—Austin 2021, pet. denied) ........................5

## Constitutional Provisions & Statutes

33 U.S.C. § 1311 .........................................................................................10

33 U.S.C. § 1344 .........................................................................................10

Tex. Gov't Code § 2001.171 ......................................................................13

Tex. Gov't Code § 2001.174 ......................................................................12

Tex. Water Code § 11.021...........................................................................2

Tex. Water Code § 11.0235(b) ....................................................................4

Tex. Water Code. § 11.0235(c)....................................................................3

Tex. Water Code § 11.02361(a)-(b).............................................................3

Tex. Water Code § 11.02362(o) ..................................................................3

Tex. Water Code § 11.124(a)(5) .............................................................7, 11

Tex. Water Code § 11.134............................................................. 1, 7, 11

Tex. Water Code § 11.147(e-3) ..................................................... 3, 4, 12

Tex. Water Code § 11.1471(a)(1) ......................................................... 4

Tex. Water Code § 11.152............................................................. passim

Tex. Water Code Ch. 11 ............................................................... passim

## Rules & Regulations

30 Tex. Admin. Code § 281.1.................................................................9

30 Tex. Admin. Code § 281.4(7) ..........................................................9

30 Tex. Admin. Code § 295.2(a) ...........................................................8

30 Tex. Admin. Code § 297.53...............................................................6

30 Tex. Admin. Code § 297.53(f) ..........................................................7

30 Tex. Admin. Code § 298.15(b) ..........................................................6

30 Tex. Admin. Code § 298.380(c)........................................................10

30 Tex. Admin. Code Ch. 298..................................................................4

30 Tex. Admin. Code Ch. 299................................................................10

## Other Authorities

36 Tex. Reg. 2908 (May 6, 2001) ...........................................................3

37 Tex. Reg. 6629 (Aug. 24, 2012)................................................. 3, 7, 10

# GLOSSARY OF TERMS AND ABBREVIATIONS

| Term | Meaning |
|---|---|
| APA | Administrative Procedure Act |
| AR | Administrative Record |
| E-Flows | Environmental Flow Standards |
| GBRA | Guadalupe-Blanco River Authority, Appellant |
| NWF | National Wildlife Federation, Appellee |
| TCEQ or Commission | Texas Commission on Environmental Quality, Appellant |

## SUMMARY OF THE ARGUMENT

The Commission was right to apply the environmental flow standards for the Guadalupe River Basin in lieu of conducting the site-specific environmental impact analysis that NWF advocates. NWF's labored interpretation of the site-specific habitat mitigation statute at Section 11.152 does not fit in the context of the rest of Chapter 11 and it subverts the Legislature's plain intent to programmatically manage flow in this basin.

Further, NWF fails to persuade that Chapter 11 requires anything more specific than what it says—applications must "state the location and describe the proposed facilities." Tex. Water Code § 11.134. And rather than mandate denial, TCEQ's rules governing water use applications give the agency many avenues for getting whatever information the agency needs to aid its decision-making. But no more-specific information was required in this case for TCEQ to conduct a full water availability and environmental flow analysis as required by Chapter 11, particularly in a basin where environmental flow standards have already been developed and a wealth of data and analysis already exists about the basin's needs. NWF wants a result that is simply not

supported by the text as a whole and the district court erred in determining otherwise.

Finally, and importantly, NWF has another problem. The substantial rights of NWF's members are not impacted by the errors they allege—their seafood restaurants in San Antonio Bay would not benefit even if each of their points of error were addressed on remand—so reversal under the Administrative Procedures Act is not appropriate.

The district court's Amended Final Judgment should be reversed, and the Commission's final order should be affirmed in all respects.

## ARGUMENT

**I.** **The Court must read the habitat assessment statute in context of Chapter 11 as a whole; doing so supports the Commission's determination that the statute does not apply to GBRA's application.**

Texas Water Code Chapter 11 is a unique environmental statute. It is a state law (with no federal corollary) devoted specifically and solely to evaluating applications and granting permits for the use of state-owned water[1] in a way that manages instream flows:

> The legislature has expressly required the commission while balancing all other public interests to consider, and to the extent practicable, **provide for the freshwater inflows**

---

[1] Tex. Water Code § 11.021.

2

> **and instream flows necessary to maintain the viability** of the state's streams, rivers, and bay and estuary systems in the commission's regular granting of permits for the use of state waters.

Tex. Water Code. § 11.0235(c). Water availability is the core of Chapter 11, and the Legislature has recognized the importance of environmental flows by establishing for their protection in specified basins at a programmatic level. Tex. Water Code § 11.147(e-3) (requiring the Commission to adopt e-flow standards) 36 Tex. Reg. 2908, 2937 (rules adopting SB3); 37 Tex. Reg. 6629, 6655 (adopting environmental flow standards specific to the Guadalupe River). The process for setting these environmental flow standards demonstrates how comprehensive this change is meant to be. It involves both the formation of a statewide Environmental Flows (E-Flows) Advisory Group and a Science Advisory Committee, comprised of members required by statute to have demonstrated expertise in "aquatic and terrestrial biology" "pertinent to the evaluation of environmental flows." Tex. Water Code § 11.02361(a)-(b). In addition, Chapter 11 requires basin-specific stakeholder committees and dedicated basin expert science teams. *Id.* at 11.02362(o). These groups' expertise and work form the basis of each set of basin-specific environmental flow standards, all of which were formally

adopted through notice-and-comment rulemaking only after the incorporation of extensive stakeholder input. *See* 30 Tex. Admin. Code Ch. 298. The environmental flow regime is the tool by which the Commission manages the ecological and biological soundness of each E-Flows basin (the Guadalupe, San Antonio, Mission, and Aransas Rivers and Mission, Copano, Aransas, and San Antonio Bays). Tex. Water Code § 11.1471(a)(1); *see also id.* § 11.0235(b).

NWF advocates that the Court should ignore the entirety of the legislatively-mandated E-Flow scheme in favor of an isolated reading of the text of one statute (§ 11.152) without regard to its context. NWF Resp. at 32-34. No canon of statutory construction supports this reading, which would subvert the Legislature's directive. A plain-language argument that requires the Court to ignore whole swaths of the statute and rules is hardly faithful to the text.

Legislative intent could not be plainer. The Legislature charged the Commission to "apply any adopted flow standards . . . *instead of considering* . . ." factors including the habitat assessment in Section 11.152. Tex. Water Code § 11.147(e-3), referring to Subsection (e), which requires consideration of an assessment under Section 11.152. The

phrase "instead of" is how we know the Legislature intended for E-Flows standards to stand "in place of" or "as a substitute for or alternative to" Section 11.152.

NWF explains this away by suggesting the text means the Commission must *still* conduct a habitat assessment under Section 11.152, just for another purpose (the purpose of assessing impacts *other than* environmental flows to terrestrial wildlife habitat). Resp. at 52. But there are two obvious problems with this interpretation. First, environmental flows are the name of the game in Chapter 11. The statute's whole aim is ensuring water flow for various purposes, including ecological purposes, so to interpret Section 11.152 as seeking to accomplish something outside this context makes little sense. Second, people use the phrase "instead of" when they are replacing one thing with another, so it would be strange for the Legislature to choose this phrase when it really intended for the Commission to conduct a habitat assessment under Section 11.152 *in addition* to applying the E-Flows standards. *TJFA, L.P. v. Tex. Comm'n on Envtl. Quality*, 632 S.W.3d 660, 667 (Tex. App.—Austin 2021, pet. denied) ("Our goal in construing a statute is to ascertain and give effect to the legislature's intent, looking

first to the plain and common meaning of the statute's words."). NWF points to no preamble or legislative history that hints even vaguely at its alternative construction. There is no need to use pretzel logic to divine the meaning of text as straightforward as this.

NWF's attempt to graft Section 11.152's habitat mitigation rules, 30 Tex. Admin. Code § 297.53, onto the off-channel reservoirs associated with this project similarly fails because it conflicts with the plain language. These rules are specifically excluded for new water rights applications in E-Flows basins:

> "For purposes of determining any environmental flow conditions in any water right permit application to which this chapter applies that are necessary to maintain: …fish and wildlife habitats…**the commission shall apply any applicable environmental flow standard**, including any environmental flow set-aside, adopted in this chapter, **instead of** considering the factors specified in Texas Water Code, §11.147(b) - (e) and §§**297.53**-297.56 of this title . . ."

30 Tex. Admin. Code § 298.15(b) (emphasis added). Thus, even if NWF is right that Section 11.152 could conceivably apply to some hypothetical reservoir, it does not apply to this one, and neither do the habitat mitigation rules at 30 Tex. Admin. Code § 297.53.

This is doubly true of the rule governing wetlands that NWF cites in arguing Section 11.152 applies even when E-Flows are adopted

6

(contrary to the text). Resp. at 55. 30 Tex. Admin. Code § 297.53(f) applies "in case of unavoidable wetlands loss" resulting from the appropriation of state water. The references to riparian and terrestrial habitats in these subsections are made in the context of restricting flow-related effects, not a general duty to assess non-flow-related effects to terrestrial habitat in every appropriation of state water. Regardless, there is no allegation of loss of wetlands in this case.

Finally, to the extent NWF's quarrel lies with the environmental flows scheme as a whole, that ship has sailed. NWF knew environmental flow standards were being adopted for the Guadalupe River—it submitted comments. *See e.g.,* 37 Tex. Reg. 6629 at 6642 (summarizing one of NWF's comments on the proposed rule). But NWF did not challenge ether the adoption of rules to implement Section 11.147(e-3) or the E-Flows standards for the Guadalupe River and it cannot do so here.

II.   **GBRA's Application provided the Commission with enough information to make the requisite determinations for issuance of the permit under Chapter 11 of the Texas Water Code.**

GBRA's Application complies with the statute—it "conforms to the requirements prescribed by this chapter" to "state the location and describe the proposed facilities." Tex. Water Code §§ 11.134; 11.124(a)(5).

The Application identifies the beginning and end points of the diversion reach where the diversion points will be located and the county location of the off-channel reservoir—*these are locations*. RR, 2-B AR 214 at PDF 8; *see also* RR, 2-C AR 262 at 1. There is no support in the statute for NWF's insistence that the location "must be made with specificity," by which NWF apparently means the location must be specified in NWF's preferred terms. Resp. at 58. The Legislature chose to use general language for this provision even if NWF wishes it had done otherwise—the statute does not define "location" and neither do TCEQ's rules.

Even more unconvincing is the suggestion that failure to comply with the application rules should mandate denial of a water right application. Resp. at 60. Denial is not a consequence that is explicit in the regulatory text, nor is it "logically necessary to accomplish the [rule's] purpose." *Image API, LLC v. Young*, 691 S.W.3d 831, 843 (Tex. 2024). To the contrary, the rules prescribe a process for dealing with "deficient" applications that gives the agency a menu of options aside from denial. *See, e.g.,* 30 Tex. Admin. Code §§ 295.2(a) (Applicants will be notified if additional information is needed; Applicants should confer with agency staff on any questions concerning preparation of the application; staff

8

may make non-substantive changes to any documents submitted by the applicant with written or verbal approval of the applicant); 30 Tex. Admin. Code § 281.4(7) (requiring applications to include "any other information as the executive director or the commission may reasonably require."). The regulations read as directives for applicants whose purpose is to ensure TCEQ gets all the information it needs to make decisions. And this is consistent with the stated goal of the rules to "establish a general policy for the processing of applications for permits, licenses, and other types of approvals in order to achieve the *greatest efficiency and effectiveness possible.*" 30 Tex. Admin. Code § 281.1 (emphasis added). In other words, the application rules are "included for the purpose of promoting the proper, orderly and prompt conduct of business," and therefore should not be regarded as mandatory. *AC Interests, L.P. v. Tex. Comm'n on Envtl. Quality,* 543 S.W.3d 703, 709 (Tex. 2018) (quoting *Chisolm v. Bewley Mills,* 287 S.W.3d 943, 945 (Tex. 1956)). Interpreting the rules to mandate denial for a perceived technical deficiency as NWF proposes (Resp. at 60) is unreasonable and would undermine their purpose entirely.

Because the adopted environmental flow regime for the Guadalupe

9

River already involved a comprehensive analysis of the seasonal flow necessary to sustain life in each segment of the basin,[2] TCEQ was able to use the diversion segment location description and the accompanying maps in GBRA's Application to make a complete water availability and environmental flow determination under Chapter 11. RR, 2-C AR 262; RR, 2-C AR 264; RR, 2-C AR 258 at 8:8-33—9:1-33, 12:1-28, 13:1-30; RR, 2-C AR 262 (Water Availability Analysis).

This is why NWF is also mistaken that TCEQ needed an exact location of the off-channel reservoirs planned for development in the future to make its determination. Resp. at 59. The application rules ensure TCEQ has what it needs to assess the impacts of diverting water from a water course. What happens with that water in a case where an off-channel reservoir is planned is not relevant to flow analysis and thus not relevant to this permit. Moreover, any potential future proceedings regarding a planned off-channel reservoir may be governed by other programs. NWF may well have opportunities to participate in future required authorization processes. *See* RR, 2-C AR 258 at 27:26-31. For example, state programs regarding dam safety and federal

---

[2] 30 Tex. Admin. Code § 298.380(c); *see also* 37 Tex. Reg. at 6636-37.

authorizations are both likely to be implicated. *See, e.g.*, 30 Tex. Admin. Code Ch. 299 (Dams and Reservoirs); 33 U.S.C. §§ 1311, 1344 (governing point-source discharges and dredging and filling activities in navigable streams administered by the U.S. Army Corps of Engineers and the U.S. Environmental Protection Agency). But NWF cannot inject its anticipatory concerns that have nothing to do with environmental flows here.

The application rules achieved their purpose, allowing TCEQ to conduct its technical review efficiently and effectively to evaluate whether GBRA's Application met statutory requirements. Tex. Water Code § 11.134; 11.124(a)(5). To give effect to NWF's preferred reading here would serve no purpose but to undermine the Chapter 11 process.

## III. None of the errors alleged in NWF's suit for judicial review of the Commission's Order prejudiced NWF's substantial rights.

Even if the district court had correctly applied Chapter 11's requirements in its review, it erred when it reversed and remanded. It is not enough for NWF to allege that general issuance of the permit harms its members. To merit reversal and remand under the Administrative Procedures Act, NWF must show that its "substantial rights . . . have

11

been prejudiced *because* the administrative findings, inferences, conclusions, or decisions" of the Commission are in error. Tex. Gov't Code § 2001.174 (emphasis added). NWF fails to do this—it cannot draw a connection between its prejudiced rights and the errors it complains about, so reversal and remand are not available. *Id.*

NWF's points of error all relate to environmental impacts to fish and wildlife habitats at the diversion points or off-channel reservoir locations in Gonzales County. CR 155-56. But the rights NWF alleges have been prejudiced are all related to freshwater inflows into San Antonio Bay, nearly 100 miles south of Gonzales County. RR, 1 AR 67 at 1-2; RR, 5 AR 292 at PDF 36 (NWF Comments); RR, 1 AR 64 at 1-2; RR, 1 AR 67 at 1-2; CR 7. Specifically, NWF's members claim that their seafood companies will suffer economically from reduced freshwater inflows into San Antonio Bay. *Id.* The Commission found otherwise.[3] But even if the Commission were to address each of NWF's points of error on remand (i.e., even if the agency conducted a site-specific habitat assessment and ignored the applicable environmental flow standards for

[3] AR 182 at FOF 81 (finding the Permit "properly applies and implements" the "freshwater inflow standards for the San Antonio Bay" and 83 ("GBRA's proposed diversion will not impair the inflow regimes into San Antonio Bay.").

12

this basin,[4] even if the application pinpointed exact diversion and reservoir locations, and even if it provided non-jurisdictional pre-application notification to Gonzales County officials), these changes would only have local effects in and around Gonzalez County where the diversion points are to be located. The freshwater inflows to San Antonio Bay would be the same. Under NWF's reasoning, its substantial rights would be prejudiced any time any water use permit was granted in this basin simply because, for NWF's members, the more water the better. NWF Br. 19. With this unremarkable observation, NWF is simply highlighting the need for managing state water. The Legislature and the Commission agree—that is why we are here. But NWF has not established how its substantial rights are prejudiced by TCEQ's alleged errors. *See City of Schertz v. Tex. Comm'n on Envtl. Quality*, 653 S.W.3d 468, 474 (Tex. App.—Amarillo 2022, no pet.) (failure to argue how a plaintiff's substantial rights have been prejudiced on account of the Commission's findings and conclusions "militates against reversal of the district court's judgment even if the Commission's findings and conclusions are unsupported."); citing *Dyer v. Tex. Comm'n on Envtl.*

---

[4] *Compare* Tex. Water Code § 11.152 with Tex. Water Code § 11.147(e-3).

*Quality*, 646 S.W.3d 498, 514 (Tex. 2022). Reversal and remand are not available because they would serve no purpose here.

In its response, NWF conflates the standards for harm related to standing with what is required to show reversible error under the Administrative Procedure Act. NWF Resp. at 17-18, 21-30. These are separate concepts and should not be collapsed. TCEQ is not challenging NWF's status as a party "aggrieved" by the permitting decision for purposes of establishing standing under Texas Government Code § 2001.171 (i.e., whether the Court has jurisdiction to hear NWF's suit). Instead, the Commission is raising a legal question about the available remedy—whether the district court can reverse and remand under the APA when no substantial rights are affected by the alleged errors. Because NWF cannot establish that its economic interest in freshwater inflows were impacted by the specific errors it alleges, the district court must be overturned.

## CONCLUSION AND PRAYER

NWF has not shown any reversible errors in TCEQ's order granting GBRA's water use permit. Accordingly, TCEQ respectfully requests that

14

the Court reverse the district court's judgment and render judgment affirming TCEQ's order in all respects.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

KELLIE E. BILLINGS-RAY
Chief, Environmental Protection Division

*/s/ Katie B. Hobson*
KATIE B. HOBSON
Assistant Attorney General
State Bar No. 24082680
katie.hobson@oag.texas.gov

OFFICE OF THE ATTORNEY GENERAL
Environmental Protection Division
P.O. Box 12548, MC 066
Austin, Texas 78711-2548
Phone: (512) 475-4019
Fax: (512) 320-0911

***Counsel for Appellant the Texas Commission on Environmental Quality***

15

## CERTIFICATE OF COMPLIANCE

I certify that this brief conforms to the type-volume limitation of Texas Rule of Appellate Procedure 9.4(i)(2)(B), because it contains 2,854 words, excluding the parts of the brief exempted by Rule 9.4(i)(1). This is a computer-generated document created in Microsoft Word.

*/s/ Katie B. Hobson*
KATIE B. HOBSON

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of January 2025, a true and correct copy of the foregoing TCEQ's Brief on the Merits has been served upon the parties listed below via electronic service or email.

Marisa Perales
marisa@txenvirolaw.com
PERALES, ALLMON & ICE, P.C.
1206 San Antonio Street
Austin, Texas 78701

***Attorney for National Wildlife Federation***

Samia Broadaway
samia.broadaway@bakerbotts.com
John Ormiston
john.ormiston@bakerbotts.com
Molly Cagle
molly.cagle@bakerbotts.com
BAKER BOTTS, L.L.P.
401 S. First Street, Suite 1300
Austin, Texas 78704-1296

***Attorneys for Guadalupe-Blanco River Authority***

    */s/ Katie B. Hobson*
KATIE B. HOBSON

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Laura Courtney on behalf of Katie Hobson
Bar No. 24082680
laura.courtney@oag.texas.gov
Envelope ID: 96705369
Filing Code Description: Other Brief
Filing Description: Reply Brief of Appellant, The Texas Commission on Environmental Quality
Status as of 1/28/2025 4:10 PM CST

Associated Case Party: Guadalupe-Blanco River Authority

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Macey ReasonerStokes | | macey.stokes@bakerbotts.com | 1/28/2025 4:00:08 PM | SENT |
| Molly Cagle | 3591800 | molly.cagle@bakerbotts.com | 1/28/2025 4:00:08 PM | SENT |
| Samia Broadaway | 24088322 | samia.broadaway@bakerbotts.com | 1/28/2025 4:00:08 PM | SENT |
| John Ormiston | 24121040 | john.ormiston@bakerbotts.com | 1/28/2025 4:00:08 PM | SENT |

Associated Case Party: National Wildlife Federation

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Marisa Perales | 24002750 | marisa@txenvirolaw.com | 1/28/2025 4:00:08 PM | SENT |
| Claire Hamerlinck | | claire@txenvirolaw.com | 1/28/2025 4:00:08 PM | SENT |

Associated Case Party: Texas Commission on Environmental Quality

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Katie B.Hobson | | katie.hobson@oag.texas.gov | 1/28/2025 4:00:08 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Laura Courtney | | laura.courtney@oag.texas.gov | 1/28/2025 4:00:08 PM | SENT |